Filed 4/15/26  P. v. Peraza CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B338966 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA086587) |
| v. | |
| JESUS ALBERTO PERAZA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John Lonergan, Jr., Judge.  Affirmed.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

In 2007, a jury convicted defendant Jesus Alberto Peraza of first degree murder, premeditated attempted murder, and aggravated mayhem. Although the trial court instructed on the natural and probable consequences doctrine, the jury found true allegations that Peraza personally and intentionally discharged a firearm causing the murder victim's death and inflicting great bodily injury on the attempted murder and aggravated mayhem victim. The jury also found true allegations that a principal personally and intentionally discharged a firearm causing the same injuries.

Peraza later petitioned the trial court for resentencing of his murder and attempted murder convictions under Penal Code section 1172.6.[1] The court initially found that Peraza made a prima facie showing of eligibility for relief and scheduled an evidentiary hearing. At that hearing, however, the court found that Peraza was ineligible for resentencing as a matter of law. The court nevertheless conducted the evidentiary hearing and found that Peraza was the direct perpetrator of the murder and attempted murder.

On appeal, Peraza argues that the trial court erred when it found that he was ineligible for resentencing as a matter of law. Peraza also contends that even though the court ultimately held an evidentiary hearing, it applied the incorrect standard of proof at that hearing, deferring to the jury's findings and refusing to make any factual findings of its own.

---

[1] All further undesignated statutory references are to the Penal Code.

We conclude any error was harmless.  It was undisputed at trial that the perpetrator of the murder and attempted murder shot both victims.  The People tried Peraza under a theory that there was only one shooter, and Peraza conceded at the evidentiary hearing on his resentencing petition that there was only one shooter.  Thus, by finding Peraza personally and intentionally discharged a firearm killing the murder victim and injuring the attempted murder victim, the jury necessarily found Peraza was the only shooter and direct perpetrator of the murder and attempted murder.  In other words, the jury made all the necessary findings to establish Peraza is guilty under currently valid theories of murder and attempted murder.  Accordingly, we affirm.

## FACTUAL BACKGROUND[2]

### 1. The shooting

Late one evening in September 2006, Daniele S. and her boyfriend, Ruben Martinez, were sitting inside Martinez's truck, which was parked outside Alex G.'s home.  Alex and his brother were outside, talking to Daniele and Martinez when three cars stopped in the middle of the street in front of Martinez's truck.

One of the cars' passengers, later identified as Peraza, got out and asked Alex and his brother "where you fools from?"  Alex responded that he was "from Maywood, but he didn't gangbang anymore."  Peraza told Alex to "get on the floor."

Peraza then turned towards Martinez's truck and shot Martinez several times.  As Peraza walked back towards the group of cars, Daniele tried to start the ignition to Martinez's

---

[2]    We grant Peraza's request for judicial notice of the record from his direct appeal.

3

truck. Peraza then walked back towards Martinez's truck and fired several shots at Daniele. At least one of the shots struck Daniele in her back, paralyzing her. Martinez later died from his injuries.

## 2.    The investigation

When first interviewed by the police, Alex initially denied being able to identify the shooter because he feared retaliation against himself and his family. Alex later identified Peraza as the shooter from a photographic lineup. Alex recognized Peraza because they went to high school together several years before the shooting.

Alex saw at least two men carrying guns, one of whom was Peraza, got out of the group of cars that stopped in front of Martinez's truck. Although Alex believed it was possible that another person fired a gun, he only saw Peraza shoot at Martinez and Daniele.

Daniele could not identify the shooter. Although she picked two men out of a photographic lineup who she thought resembled the shooter, she could not confirm whether either man was Peraza.

The police recovered nine expended nine-millimeter shell casings and six bullet fragments from the scene of the shooting. Although the shell casings were not all made by the same manufacturer, a firearms expert who examined them determined that they were all fired from the same gun. The expert also determined that five of the six bullet fragments were consistent with being part of nine-millimeter bullets. The expert could not determine whether the sixth fragment was also part of a nine-millimeter bullet because the fragment was too small to test.

## PROCEDURAL BACKGROUND

### 1.    The original trial court proceedings

In June 2007, the People filed an amended information charging Peraza with murder (count 1), premeditated attempted murder (count 2), and aggravated mayhem (count 3). As to count 1, the People alleged three personal-use firearm enhancements, including that Peraza personally and intentionally discharged a firearm causing great bodily injury and death to Martinez (§ 12022.53, subds. (b)–(d)). The People alleged the same firearm enhancements as to counts 2 and 3, including that Peraza personally and intentionally discharged a firearm causing great bodily injury to Daniele (§ 12022.53, subds. (b)–(d)). As to all three counts, the People alleged that a principal used and discharged a firearm (principal-use firearm enhancements) (§ 12022.53, subd. (e)). The People also alleged various gang and prior conviction enhancements.

At trial, the prosecution's primary theory was that Peraza was the only shooter and direct perpetrator of the murder and attempted murder. Alternatively, the prosecutor argued to the jury that it could convict Peraza as an aider and abettor. The prosecutor stated, "if for some reason you were to find or believe that [Peraza] was one of the armed gun men, but maybe wasn't the one who actually pulled the trigger, and, again, I don't know how you get to that point[, but] if you were to find that, [Peraza] is still guilty of murder." The prosecutor later argued, "Again, I don't know how you get to that point, and I think the only way you get to the point of him being aider and abettor is if you were to believe that [Alex] is correct, that [Peraza's] one of the people out there with a gun, but he wasn't the one that fired those fatal shots, or the shots that injured, then he would be aider and

abettor, and not the actual perpetrator." The prosecutor explained to the jury that it could convict Peraza as an aider and abettor under the natural and probable consequences theory, if it found that he intended to aid and abet an assault with a deadly weapon, the natural and probable consequence of which was one of the charged offenses.

Peraza's defense at trial was that the People failed to prove he was involved in the shooting. Peraza's closing argument focused primarily on attacking the credibility of Alex's identification of Peraza as the shooter and arguing that the People otherwise failed to present evidence connecting him to the shooting.

The trial court instructed the jury on, among other things, the principles of first and second degree murder, generic and premeditated attempted murder, aiding and abetting generally, the natural and probable consequences doctrine, assault with a firearm as the target offense for the natural and probable consequences theory, personal and intentional discharge of a firearm causing great bodily injury or death, and a principal's intentional discharge of a firearm causing great bodily injury or death.

The jury convicted Peraza of first degree murder, premeditated attempted murder, and aggravated mayhem. The jury found true all the personal-use firearm enhancements, including that Peraza personally and intentionally discharged a firearm causing great bodily injury to Daniele and great bodily injury and death to Martinez. The jury also found true all the principal-use firearm enhancements. The jury found true the gang enhancements, and, in a bifurcated proceeding, the trial

court found true the prior conviction allegations.  The court sentenced Peraza to 130 years to life in prison.

A different panel of this division affirmed Peraza's convictions on direct appeal in 2010.

## 2. Section 1172.6 proceedings

In June 2023, Peraza filed a resentencing petition under section 1172.6.  The trial court found Peraza made a prima facie showing of eligibility for resentencing and scheduled an evidentiary hearing.

In June 2024, the trial court held an evidentiary hearing under section 1172.6, subdivision (d)(3), at which the parties did not present any new evidence.  At the hearing, defense counsel conceded that it was "clear it's one shooter," "[w]e are not disputing that there was one shooter."  Instead, defense counsel argued that the People failed to prove beyond a reasonable doubt that Peraza was the shooter because Daniele never confidently identified him as such and Alex's identification lacked credibility.

After hearing argument from both parties, the trial court explained that it issued an order to show cause and scheduled an evidentiary hearing because section 1172.6 "has evolved to where now it is almost automatic.  The appellate courts have provided guidance to the trial courts and it does not take a lot to make a prima facie showing so that's been done."  The court went on, "[m]y approach to this is as the appellate courts have kind of dictated.  I almost always [make] a prima facie finding . . . ."

Nevertheless, the trial court found that Peraza was ineligible for resentencing as a matter of law "because a jury has returned a verdict and has clearly indicated . . . that [Peraza] was the shooter."  The court explained that the jury found Peraza personally and intentionally discharged a firearm causing great

7

bodily injury and death to Martinez and great bodily injury to Daniele, "even though [the jury] had the ability to make a ruling on the accomplice charges regarding [section] 12022.53[, subdivisions] (b), (c), and (d)."

The trial court also stated that it "look[ed] at the evidence in the case" and found that Peraza was ineligible for resentencing "in the event that an appellate court would disagree with [the court] and deem [Peraza] eligible." The court explained that it was "not going to try to put itself in the position of the jury without all these factors that a jury is told to consider in the instructions such as demeanor and a reason why a witness may forget or the credibility of the witness, how they can judge the credibility of a witness using several factors that were given that jury. [¶] . . . [¶] . . . [B]ased on the fact that [Daniele] was never able to affirmatively identify . . . Mr. Peraza whether it was trial, prelim or her initial statements, the court looks at that she did identify two people and one was [Peraza] in a six-pack. And from day one she basically was saying that those two could be or appeared to be similar to the suspect she described or the shooter. And in my experience again the jury is in the best position 17, 18 years ago to listen to her testimony, watch her demeanor versus me from a transcript 17, 18 years later. [¶] But ultimately that in my opinion even looking at the transcript does somewhat corroborate [Alex] because there may be many reasons and obviously the jury heard those reasons why [Alex] based on his background and experience may be reluctant to identify somebody."

The court concluded, "So what we have is based on the jury's findings is Mr. Peraza is ineligible as a matter of law. And then taking the next step as if an appellate court would disagree

with the court's finding in that, I think it's clear from the evidence that was presented to that jury and consistent with the jury's findings that that jury made a determination that Mr. Peraza was the shooter. He personally had a firearm. He discharged it, ultimately not only killing Mr. Martinez but injuring and paralyzing [Daniele] and then also doing as far as count 3, the mayhem on [Daniele]. So for those reasons I am not going to disturb that jury finding and the motion to resentence under [section] 1172.6 is denied."

Peraza appeals.

## DISCUSSION

### 1. Applicable law and standard of review

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) to eliminate the natural and probable consequences doctrine and to limit application of the felony murder rule. (*People v. Curiel* (2023) 15 Cal.5th 433, 448–449 (*Curiel*).) Except in cases of felony murder, a principal must act with malice aforethought to be convicted of murder, and malice "shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 created a new procedure allowing defendants convicted of murder under a now-invalid theory to petition the sentencing court for retroactive relief under section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) The Legislature later enacted Senate Bill No. 775 (2021–2022 Reg. Sess.) to extend this retroactive relief to defendants convicted of attempted murder under a natural and probable consequences theory. (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 864.)

If the defendant files a facially sufficient petition under section 1172.6, the trial court must hold a hearing to determine whether the petitioner has made a prima facie showing of eligibility for relief.  (§ 1172.6, subds. (b)(3) & (c).)  If the defendant makes a prima facie showing, the court must hold an evidentiary hearing.  (*Id.*, subd. (d).)

At the evidentiary hearing, the prosecution bears the burden to prove beyond a reasonable doubt that the defendant is guilty of murder or attempted murder under a currently valid theory.  (§ 1172.6, subd. (d)(3).)  "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (*Ibid.*)  Rather, the "trial court's role in a section 1172.6 [evidentiary hearing] is to act as an independent fact finder and determine, in the first instance, whether the petitioner committed murder [or attempted murder] under the law as amended by Senate Bill No. 1437."  (*People v. Trent* (2025) 112 Cal.App.5th 251, 258.)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (§ 1172.6, subd. (d)(3).)

We independently review the trial court's prima facie finding under section 1172.6.  (*People v. Estrada* (2024) 101 Cal.App.5th 328, 337.)  We review the trial court's factual findings following a section 1172.6, subdivision (d)(3), evidentiary hearing for substantial evidence.  (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

## 2. Any error in denying Peraza's resentencing petition was harmless

Peraza contends the trial court erred in finding he was ineligible for resentencing as a matter of law. Peraza also contends that the court applied the wrong standard of proof at the evidentiary hearing because it deferred to the jury's findings and refused to make its own findings as to whether Peraza was guilty beyond a reasonable doubt under currently valid theories of murder and attempted murder. As we explain, we need not determine whether the trial court erred in denying Peraza's resentencing petition because any error was harmless.

We apply the harmless error standard established in *People v. Watson* (1956) 46 Cal.2d 818 to evaluate whether a defendant was prejudiced by a trial court's error in denying a resentencing petition at the prima facie stage. (See *People v. Lewis* (2021) 11 Cal.5th 952, 973–974.) We apply the same standard to determine whether a defendant was prejudiced by the trial court's application of the wrong standard of proof at the evidentiary hearing under section 1172.6, subdivision (d)(3). (*People v. Vance* (2023) 94 Cal.App.5th 706, 716.) Under the *Watson* standard, Peraza has the burden of showing it is reasonably probable that he would have obtained a more favorable result but for the trial court's error in denying his resentencing petition. (*Lewis*, at p. 974.)

Here, the jury found Peraza guilty of first degree murder and premeditated attempted murder. The trial court instructed the jury, however, that it could convict Peraza of either crime as an aider and abettor under a natural and probable consequences theory. Thus, the jury's findings of guilt as to the murder and attempted murder charges do not, on their own, establish Peraza

11

was convicted of murder and attempted murder under currently valid theories of those offenses. (See *People v. Morales* (2024) 102 Cal.App.5th 1120, 1131 (*Morales*).)

But the jury also found true the firearm allegations under section 12022.53, subdivision (d), as to the murder and attempted murder charges. Here, as reflected on the verdict form for the murder charge, the jury found that Peraza "personally and intentionally discharged a firearm, . . . which proximately caused great bodily injury and death to Ruben Martinez." As to the attempted murder charge, the jury found that Peraza "personally and intentionally discharged a firearm, . . . which proximately caused great bodily injury" to Daniele.

While the jury's true findings under section 12022.53, subdivision (d) do not, on their own, establish that Peraza acted with malice aforethought or the intent to kill (see *People v. Offley* (2020) 48 Cal.App.5th 588, 598–599), they do establish that Peraza was Martinez's actual killer and that he was a shooter in Daniele's attempted murder. (See *Curiel, supra,* 15 Cal.5th at pp. 460, 470 [the jury's factual findings should be given preclusive effect in resentencing proceedings under section 1172.6].) As we explain, under the circumstances of this case, those findings establish that Peraza was the only shooter and the direct perpetrator of both Martinez's murder and Daniele's attempted murder.

At trial, it was undisputed that the perpetrator of both crimes shot and killed Martinez and shot and injured Daniele using the same gun. The People proceeded under a theory that there was only one shooter. Their primary theory was that Peraza was the shooter who killed Martinez and injured Daniele, while their alternative theory was that Peraza was guilty as the

12

shooter's aider and abettor. Although Peraza argued that the People failed to prove that he was involved in the shooting, he did not dispute that there was only one shooter. Indeed, at the section 1172.6, subdivision (d)(3) evidentiary hearing, Peraza's counsel conceded, "We are not disputing that there was one shooter. [¶] . . . [¶] It's clear it's one shooter."

The evidence presented at trial was consistent with a theory that there was only one shooter. Alex testified that he saw Peraza shoot Martinez and Daniele. Although he saw other people carrying guns, Alex testified that Peraza was the only person he saw fire shots. Daniele described only one shooter when she testified about the shooting. The firearm expert testified that all the shell casings recovered from the scene of the shooting were fired from the same gun, and five of the six bullet fragments were of the same caliber. The sixth bullet fragment was too small to test. There was no evidence that multiple shooters were involved in Martinez's murder and Daniele's attempted murder.

By finding that Peraza personally and intentionally discharged a firearm causing Martinez's death and inflicting great bodily injury on Daniele, the jury found that Peraza was the only shooter and the direct perpetrator of the murder and the attempted murder. (See *Morales*, *supra*, 102 Cal.App.5th at pp. 1132–1133.) Thus, the jury's findings under section 12022.53, subdivision (d), show that the jury did not rely on an imputed malice theory, including a natural and probable consequences theory, in convicting Peraza of murder and attempted murder. (*Morales*, at pp. 1132–1133.) The jury's findings, therefore, establish that Peraza was convicted under currently valid theories of murder and attempted murder. (*Ibid.*)

13

Peraza points to the jury's true findings sustaining the principal-use firearm enhancement allegations to argue that the jury may have relied on a natural and probable consequences theory to convict him of murder and attempted murder. According to Peraza, those findings support a theory that the jury found only a principal, and not necessarily Peraza, shot and killed Martinez and shot and injured Daniele. Under such a theory, Peraza argues, the jury could have imputed malice to him when it found him guilty of murder and attempted murder. We disagree.

As the People point out, Peraza's argument would have merit if the jury did not also find that Peraza personally and intentionally shot and killed Martinez and shot and injured Daniele under section 12022.53, subdivision (d). Those findings are not negated by the jury's findings sustaining the principal-use firearm allegations under section 12022.53, subdivision (e).

In addition, the jury was never instructed that to sustain the principal-use firearm enhancement allegations, it needed to find someone other than Peraza was a principal in the murder and the attempted murder. Nor was the jury otherwise instructed that it could only sustain the principal-use firearm allegations if it found Peraza aided and abetted the murder and the attempted murder. Indeed, the court instructed the jury that "principals" include both those who "aid and abet a crime *and those who directly perpetrate the crime*." (Italics added.)

Since the parties proceeded under a theory that there was only one shooter, and because Peraza conceded at the evidentiary hearing that there was only one shooter, the jury's findings under section 12022.53, subdivision (d), establish that the jury found that Peraza was the only shooter and direct perpetrator of both

14

Martinez's murder and Daniele's attempted murder. The jury's findings sustaining the principal-use firearm enhancement allegations are entirely consistent with, and do not negate or otherwise contradict, those findings.

In short, because the jury's findings sustaining the personal-use firearm enhancement allegations under section 12022.53, subdivision (d), establish that Peraza was convicted under currently valid theories of murder and attempted murder, the trial court was ultimately correct that Peraza was not eligible to be resentenced. As a result, it is not reasonably probable that Peraza would have received a more favorable result but for any error in the trial court's denial of his resentencing petition during the evidentiary hearing. In other words, any error in the trial court's denial of Peraza's petition was harmless.

## DISPOSITION

The order denying Peraza's resentencing petition is affirmed.


VIRAMONTES, J.


WE CONCUR:



STRATTON, P. J.



WILEY, J.

15